OPINION OF THE COURT
Anthony A. Scarpino, Jr., S.
Incident to this contested probate proceeding, the guardian ad litem for infant distributees seeks authorization to retain a medical expert to be paid from the estate.
Leonard Greene (decedent) died on December 1, 2006, at the age of 88, survived by seven children and two grandchildren (issue of a predeceased child who was a passenger on United Airlines Flight 93 on September 11, 2001). Charles Groppe, Esq. was appointed as the guardian ad litem for infant grandchildren. Separate objections have been filed by decedent’s children (hereinafter collectively referred to as objectants) and the guardian on behalf of his wards. The gross estate is estimated between $26 million and $35 million, consisting primarily of silver holdings, a yacht, farmland in Montana and real property in New York and Connecticut. To date, extensive discovery has been conducted by the parties.
The propounded will, dated November 8, 2006, was executed three weeks before decedent died from lung cancer. It is offered for probate by the attorney-drafter. Under the propounded will, decedent made preresiduary bequests of specific property and his interest in a corporation to some of his children, devised real property in Montana to one child, made monetary bequests to his caretakers and disposed of his residuary estate to the Institute for SocioEconomic Studies Inc. (ISES), a charitable foundation he established in 1974.
The propounded will departs markedly from four prior wills (executed between November 2003 and January 2006) under which decedent made preresiduary bequests to his caretakers and disposed of his estate to his children and grandchildren. Objectants find it inexplicable that their father would depart from his testamentary plan, claiming that their relationship with him was at all times close and devoted.
*601 Objectants and the guardian allege that at the time decedent signed the propounded will he lacked the requisite capacity to make a will. They contend that decedent suffered from insane delusions caused or exacerbated by his abuse of prescription steroids. Such abuse, coupled with decedent’s advanced cancer, ongoing aggressive chemotherapy treatments and recent surgery, impaired his testamentary capacity to make a will.
In detailed objections, objectants allege that during the final months of his life decedent became delusional believing that he was a central figure in the struggles with the Middle East. Decedent is alleged to have told his psychologist that he was going to trade his life for Osama Bin Laden’s and save the world by becoming a target for a terrorist attack. Object-ants assert that decedent’s home care attendants and ISES employees also became alarmed by his erratic and aggressive behavior.
The guardian refers to interviews with decedent’s home care attendants, employees and family members as substantiation for his filing objections to probate. He considers the retention of a medical expert essential to establish decedent’s lack of testamentary capacity or that decedent was suffering from insane delusions. The guardian seeks to retain Owen M. Wolkowitz, M.D., a professor of psychiatry at the Langley Porter Psychiatric Institute, University of California, San Francisco. Dr. Wolkowitz has written extensively on the subject of “Steroid Dementia Syndrome” and is considered an expert on the behavioral effects of steroid use, in particular Decadron, which decedent is alleged to have abused. The guardian seeks an award of $40,000 to retain Dr. Wolkowitz for an initial consultation and review of decedent’s medical records. The guardian has not yet obtained a precise statement of the time Dr. Wolkowitz will require, but estimates it will take up to 100 hours. Dr. Wolkowitz charges between $400 and $450 per hour.
Proponent opposes the request on the grounds that there is no precedent for such relief and that the grant of the application would be inequitable inasmuch as objectants may benefit from the expert’s advice.
There does not appear to be any decision that authorizes a guardian to hire a medical expert in a will contest. However, in similar situations our courts have permitted guardians ad litem to retain professionals (see Estate of Van Der Woude, *602 NYLJ, Aug. 14, 1995, at 33, col 5 [Sur Ct, Suffolk County] [forensic accountant]; Matter of Bankers Trust Co., NYLJ, Dec. 17, 1996, at 26, col 6 [Sur Ct, NY County] [trial expert]; Estate of Papendorf, NYLJ, June 15, 2001, at 22, col 6 [Sur Ct, Queens County] [genealogist]; Matter of Galley, NYLJ, June 26, 1996, at 31, col 1 [Sur Ct, Queens County] [genealogist]; Estate of Nagel, NYLJ, Aug. 15, 2006, at 33, col 6 [Sur Ct, Westchester County] [litigation counsel]; Matter of Kochovos, NYLJ, Feb. 10, 1989, at 24, col 6 [Sur Ct, Bronx County] [private investigator’s fees allowed in part]; see also analogous conservatorship proceeding In re Cherniakova [Kolischer], NYLJ, July 10, 1992, at 21, col 4 [Sup Ct, NY County] [medical expert]). Even where a guardian ad litem’s request for an allowance to retain a professional’s services was denied, those courts recognized that such relief may be granted under different circumstances (see Estate of Stralem, NYLJ, Aug. 22, 1995, at 26, col 5 [Sur Ct, Nassau County]; Matter of Kochovos, supra; Gilman Paper Co. v Gilman, 110 AD2d 592 [1st Dept 1985]).
While none of the cited decisions establish criteria for granting or denying such relief, implicit are the requirements that the professional’s services fall outside the guardian ad litem’s expertise and that such services are indispensable in his or her representation of the ward. Initially then, whether the circumstances here warrant the grant of such relief requires consideration of the role of a guardian ad litem.
New York has had a long history of protecting persons under a disability. Sections 402 and 403 of the SCPA mandate the appointment of a guardian ad litem whenever a person under a disability is a necessary party to a proceeding in the Surrogate’s Court. Following an appointment, SCPA 404 (3) directs the guardian ad litem to “take such steps with diligence as deemed necessary to represent and protect the interests of the person under disability.”
Although a guardian ad litem has been alternatively described as “the attorney for the ward” (see Matter of Mackenzie, 155 Misc 822, 825 [Sur Ct, Kings County 1935]) and “an officer of the court” (see Matter of Roe, 65 Misc 2d 143, 146 [Sur Ct, Suffolk County 1970]), such functions are not disparate. In denying an application to remove a zealous guardian ad litem, the court in Matter of Schrier (157 Misc 310, 312 [Kings County 1935] [citations omitted]) harmonized the dual functions by describing the role of a guardian ad litem as follows:
*603 “[The guardian is] in a sense a representative and officer of the court which appoints him, but this is strictly limited by the duties which he is called upon to perform, which are to protect the interests of wards of the court whose conservation is enjoined upon it. . . .
“So far as concerns [the guardian’s] relation to the litigation for which he is appointed, he acts purely and solely as the attorney for the particular persons whose interests he is designated to protect. The assertion, therefore, of strong partisanship on behalf of his statutory clients, far from being an aspersion, amounts to a recommendation.”
In effect, the person under a disability is the guardian’s client (see 22 NYCRR 207.13 [a] [wherein the ward is referred to as a “client”]). Thus, it is incumbent upon a guardian ad litem to serve as an advocate for his or her ward as he or she would any other client.
Based upon his investigation, the guardian here takes the position that decedent’s testamentary capacity was impaired by the abuse of steroids and other medications. As a layperson he requires the services of a medical expert to assess the evidence obtained, to prepare for cross-examination of medical witnesses including an expert called by another party, and to prepare his case. It is the guardian’s professional judgment that he requires an expert’s opinion to prosecute his objections. Absent such authorization, the guardian, and consequently his wards, whose intestate share is one eighth of the decedent’s estate, may be disadvantaged. Denial of the guardian’s application could prevent him from adequately representing his wards.
The fact that objectants may benefit from the guardian’s efforts should not be determinative here. It is not uncommon in Surrogate’s Court proceedings for litigants on one side of a matter to derive some benefit from the services of a guardian ad litem; although in some cases the involvement of another party may influence the decision whether to authorize a guardian to retain a professional. For example, in Gilman Paper Co. v Gilman (supra) the guardian ad litem’s request to hire an expert appraiser was disallowed because the ward’s interest was marginal and his mother had already obtained a thorough appraisal.
While at present the guardian and objectants appear united in their position, they do not share a collective interest in the *604 estate. Each objectant may at any time withdraw his or her objections, or settle with the proponent, without the consent of any other party. Under such circumstances the guardian should not be made to rely upon actions taken by another party. Moreover, at this time the guardian cannot speculate as to the opinion of his expert or that of any other party. As with all of the parties, each must make certain disclosures concerning an expert retained, but no party is required to reveal an expert’s report (see CPLR 3101 [d] [1] [i]). Consequently, the grant of this application serves to level the playing field among all of the parties.
The guardian has demonstrated that the expert’s services fall outside his expertise and that such services are necessary to enable him to effectively represent his wards. We turn now to whether the court may direct the preliminary executor to advance the guardian funds to pay the expert.
There is no express provision which authorizes payment to an expert retained by a guardian ad litem. However, sections 405 and 2111 of the SCPA provide for compensation of a guardian ad litem and authorize the advance payment of such fees.
SCPA 405 (1) provides that a guardian ad litem’s compensation may be charged in whole or part to the estate, to the interest of the person under a disability or to any other party for good cause shown. As a general rule, the guardian’s compensation is charged against the estate because his or her appointment is jurisdictional and the finality of a decree inures to the benefit of all persons interested in the estate (see Livingston v Ward, 248 NY 193 [1928]; Estate of Ziegler, NYLJ, Aug. 6, 1991, at 23, col 1, affd Matter of Ziegler [Steinkraus], 184 AD2d 201 [1st Dept 1992]).
In most proceedings, the court will fix the guardian ad litem’s fee which may include payment of disbursements, at the conclusion of the proceeding. In 1993, SCPA 2111 was amended to provide for an advance payment of fees to guardians ad litem. Subdivision (1) of section 2111 provides that where an application is granted, the court may “award a sum on account of compensation or make such other order, if any, as justice shall require.” It is clear from these statutes that the court has latitude to fix and determine the legal fees and disbursements of a guardian ad litem at any time during a proceeding.
Based upon the foregoing, the application is granted. The guardian is authorized to retain an expert for purposes of *605 reviewing decedent’s medical records and to consult with the guardian concerning the findings. The guardian shall obtain an estimate from the expert of the time required for such services. Upon receipt, the guardian shall settle an order providing for payment to the expert in the estimated amount.